## ST. LOUIS, B. & M. RY. CO. v. WEBBER.
### (No. 334.)

(Court of Civil Appeals of Texas. Beaumont. March 28, 1918. Rehearing Denied April 10, 1918.)

1. RAILROADS ☞212—RECEIVERS—"OBLIGATIONS"—NEGLIGENCE.

Where court ordered railroad to take back its assets from the receiver with all the "obligations" of the receiver, the word "obligation" included cause of action by an employé for injuries from negligence of the receiver.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Obligation.]

2. RAILROADS ☞212 — NEGLIGENCE — LIABILITY OF COMPANY IN HANDS OF RECEIVER.

Receipt for property by railroad which "released and relieved" the receiver "from all liabilities, claims, or demands and actions" was supported by a consideration and implied a promise to pay liabilities occasioned by negligence of receiver, and could be sued on by injured employé.

3. APPEAL AND ERROR ☞301 — MOTION FOR NEW TRIAL—CHANGE OF VENUE.

Under court rules 24 and 70 (142 S. W. xii, xxii), rules 1 and 101a (159 S. W. viii, xi), and Vernon's Sayles' Ann. Civ. St. 1914, art. 1612, overruling of a plea of privilege for change of venue cannot be reviewed where not set up in the motion for new trial.

4. DAMAGES ☞132(1)—AMOUNT—INJURIES TO ARM AND HEAD.

$6,500 was not excessive damages where arm was rendered useless, head and face were scarred, and brain affected, and 48 days were spent in hospital.

Appeal from District Court, Harris County; J. D. Harvey, Judge.

Action by Elbert Webber against the St. Louis, Brownsville & Mexico Railway Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Andrews, Streetman, Burns & Logue, of Houston, for appellant. Presley K. Ewing, of Houston, for appellee.

BROOKE, J. Elbert Webber sued the St. Louis, Brownsville & Mexico Railway Company on May 31, 1916, praying for damages in the amount of $20,000, on account of personal injuries sustained while in the employ of Frank Andrews, receiver of the assets and properties of defendant; it being alleged that such injuries were proximately caused by the negligence of the receiver, his servants and agents, and that the railway company was liable therefor.

The cause came on for trial before a jury on the 24th day of November, 1916, and was on November 27, 1916, submitted on one special issue touching only the measure of damages in the case. The verdict of the jury fixed the amount of damages at $6,500. On motion of plaintiff the court, on December 5, 1916, before the expiration of the term, entered judgment in favor of plaintiff, and against defendant, in the amount of $6,500, with interest and costs of court, defendant excepting to the order. In due time defendant filed its motion for new trial, and thereafter, under leave of the court, on December 4, 1916, amended same. The said motion was in all things overruled by the court, and notice of appeal to the Court of Civil Appeals for the First Supreme Judicial District, at Galveston, was given. The Supreme Court has certified the case to this court, and it is now before us for revision.

The first assignment of error challenges the action of the court as being error in entering judgment in favor of the plaintiff upon the jury's verdict, for that, there being no evidence whatsoever to the effect that the receiver made any improvements or betterments upon the defendant's railroad, it also wholly fails to appear from the evidence that the railway company, in reacquiring its properties after the discharge of the receiver, assumed any obligation to take care of the liabilities such as involved in this suit.

The proposition under this assignment urges that the evidence is insufficient to indicate an assumption by the railway company in receiving its properties without sale from the hands of the receiver of any obligation such as that sought to be asserted in this suit.

On the contrary, it is urged that the assignment is without any merit, for either of two good and sufficient reasons: (1) Because the statute in force now, and when the plaintiff's cause of action arose, and prior to the receivership in question, affirms liability of the appellant on such cause of action; and (2) because the appellant, by itself, as well as by the decree directing the return of its property and assets, assumed the obligation evidenced by the plaintiff's cause of action.

It appears that the receivership was a friendly one, wherein the defendant appeared, waiving time, and consented to the appointment of Frank Andrews as receiver, to take over and operate its premises, and that it was pursuant to this consent action that such receiver was appointed, to wit, on July 5, 1913.

It further appears that by the defendant's application for discharge of the receiver, filed April 14, 1916, under oath of its vice president, J. S. Pyeatt, it appeared that the defendant had financed and provided for the payment or taking care of the various demands against it so that the receivership had accomplished its purpose, and that it then, as a means of getting the property returned to it, stated to the court that it was "ready and willing to assume and able to pay all obligations incurred by said receiver of every kind whatsoever, and that, with this offer of payment, it requested and prayed that the property be delivered to it by order of the court," subject to such terms and conditions as the court may impose, to secure the payment of the receiver's obligations and the performance of the receiver's contracts incurred by said receiver as such while administering the property of said railway company.

It appears further that by the order discharging the receiver it was directed that all of the defendant's properties, rights, franchises, privileges, and immunities and all claims, demands, accounts, notes and bills of every kind and character whatsoever and wheresoever situated be delivered to it, and that the defendant so receiving back such property, its successors and assigns, should "take all of the benefits and assume all of the obligations" created by certain contracts entered into by the receiver under orders of the court, and should "especially assume all of the obligations of said receiver," and should "pay off, satisfy, and discharge according to their terms, tenor, and effect all receiver's certificates" and should "especially assume all of the obligations assumed by said Frank Andrews, receiver, under a certain specified contract with the Guaranty Trust Company of New York, trustee for the purchase of equipment."

It seems that by such order of discharge the court stripped itself of every item of property that could be made available for payment of the plaintiff's claim, and retained jurisdiction only in the event the defendant failed to make payment of any amount which it "has assumed to pay, pursuant to the provision hereof, as and when the same shall hereafter become due and payable," so that, if the plaintiff's cause of action was not within the terms of the decree, there was no provision made for payment of such claim by reserved jurisdiction or otherwise.

After the defendant had given its receipt, on May 27, 1916, to the receiver for "all the properties, rights, franchises, privileges, and immunities of every kind and character whatsoever held, claimed, or possessed by him as receiver," it passed at a regular meeting of its board of directors a resolution, to wit, June 6, 1916, whereby, in recognition of its obligation to pay such demands as the obligation in question, it formally acknowledged receipt from said receiver of all such property, and bound itself to him in the words, "and the said Frank Andrews, as receiver as aforesaid, is hereby released and relieved from all liability, claims, demands, and actions of every kind and character whatsoever, in so far as the St. Louis, Brownsville & Mexico Railway Company has the power to grant such release." The plaintiff's cause of action arose out of and during the aforesaid receivership of Frank Andrews of the properties of the defendant, for negligence chargeable to such receiver towards a servant, and is an unpaid liability of such receiver.

Nothing in the federal court's order in this case granting a discharge of the receiver and the redelivery of the property held by the receiver hints at or suggests any immunity of the defendant from the recovery adjudged against it in this case by the court below, but, on the contrary, provides for the liability here asserted. In our judgment, the recovery was proper against the defendant, under its assumed liability.

[1, 2] If the claim was within the terms of the order for payment by the defendant, then the reserved jurisdiction of the federal court as to it was cumulative only; if otherwise, there was no reservation of jurisdiction by the federal court as to it. If the

word "obligation" can ever apply to a liability like that in favor of the plaintiff, resting as it did upon an implied term in the contract of service, it must be given that broader meaning here, because only by that means can a wrong be averted and justice be brought about. When it is considered that a valuable consideration was supplied in the redelivery of the property to the defendant by the court, through its receiver, Frank Andrews, the promise to the latter, necessarily to be implied, was sufficient to create an assumpsit in favor of the plaintiff against the defendant for the demand in suit, independent of the terms of the court's order; for, as above stated, the defendant's language whereby for receipt of the property it "released and relieved" the receiver "from all liabilities, claims, or demands and actions of every kind and character whatsoever" certainly implied a promise to pay all such liabilities, claims, demands, and actions, and under the decisions of this state a promise for a valuable consideration by one person to another for the benefit of a third party may be availed of by that third party.

We deem it unnecessary to go into this matter at greater length in this opinion, and therefore, without further comment, it is our judgment that the assignment must be overruled.

[3] By the second assignment complaint is made that the trial court erred to the prejudice of defendant in overruling the plea of privilege in this cause, because, it appearing from the record and the undisputed evidence that the residence of plaintiff at the time of the accident in question was in Kingsville, in Kleberg county, Tex., and not in Harris county, Tex., which, in view of the provisions of the statutes of Texas controlling the venue of this suit, required that the cause be transferred from the district court of Harris county, Tex., to the district court of Kleberg county, Tex., or to some other county than Harris county, Tex., for venue. Complaint is made to the consideration of this assignment of error as follows:

"We object to the consideration of this assignment of error, relating to venue, because the matter of which complaint is made in the assignment was not set up as a ground of error in appellant's motion for new trial, and was clearly therefore under the Supreme Court's rules for the district court, and under its rules for the government of the Courts of Civil Appeals, and under the statutes, to be deemed abandoned by the appellant, so that said assignment relating to the venue is not reviewable by this court."

"Aside from the failure to present the question in the motion for new trial, the point cannot be here reviewed, because the bill of exceptions was not seasonably presented or filed, but several terms after the ruling was made."

We shall not undertake to go into this matter at length, but will say that rule 70 for the district and county courts (142 S. W. xxii) is as follows:

"In motions for continuance, for the change of venue, and other preliminary motions made and filed in the progress of the cause, the rulings of the court thereon shall be considered as acquiesced in unless presented in a bill of exceptions; and the rulings thereon shall be made a ground of objection in motions for new trial or in arrest of judgment if they are desired to be relied on as grounds of error."

Rule 101a (159 S. W. xi) promulgated by the Supreme Court for the district and county courts provides:

"In all cases in which a motion for new trial is filed, the assignments contained in such motion or amended motion as finally ruled upon by the trial court shall constitute the assignments of error. All errors not distinctly specified in such motion, or in the assignments of error where a motion for new trial is not filed, shall be waived."

It is also provided in rule 24 for the Courts of Civil Appeals (142 S. W. xii; Harris Ann. Rules of the Courts, p. 19):

"The assignment of error must distinctly specify the grounds of error relied on, and distinctly set forth in the motion for new trial in the cause, and a ground of error not distinctly set forth in the motion for new trial in a cause, and not distinctly specified in reference to that which is shown in the record, or not specified at all, shall be considered as waived, unless it be so fundamental that the court would act upon it without an assignment of error."

Rule 1 (159 S. W. viii), governing application for writs of error, provides:

"The decision, or ruling sought to be reviewed must have been assigned as error in the motion for new trial in the trial court, if such motion was made or required by law to be made, and such error must have been assigned and presented in the Court of Civil Appeals and in a motion for rehearing in the latter court."

Vernon's Sayles' Texas Civil Statutes, vol. 1, art. 1612, provides:

"The appellant or plaintiff in error shall in all cases file with the clerk of the court below all assignments of error, distinctly specifying the grounds on which he relies, before he takes the transcript of record from the clerk's office: Provided, that where a motion for new trial has been filed that the assignments therein shall constitute the assignments of error and need not be repeated by the filing of the assignments of error, and provided further, that all errors not distinctly specified are waived."

We are therefore of opinion that this assignment cannot be considered. Searcy v. Grant, 90 Tex. 97, 37 S. W. 320; Levy v. Lupton, 156 S. W. 362; American Warehouse Co. v. Ray, 150 S. W. 763. The assignment therefore is overruled.

[4] The third assignment complains of the action of the lower court in overruling and in not granting the amended motion for new trial upon the grounds presented in paragraph 1 for said motion, which reads as follows:

"The verdict of the jury in the amount thereof is grossly excessive and evidences not a fair consideration of the testimony bearing upon the measure of damages, but rather prejudice, bias, or some other improper motive."

It appears from the testimony in this case and from plaintiff's evidence that when he was injured they took him over to the army camp and dressed him, and that he was thereafter taken to the depot; thence he

was taken to Kingsville to the defendant company's hospital, where he remained for 28 days; that the collision was about 7 o'clock at night; and that it was before or after 12 o'clock that night before he reached the hospital at Kingsville. Plaintiff testified that when he could get a job he always worked, and that when he saw the company's doctor, Dr. Shelton, at Kingsville, his arm was then crooked, and that he found that it was crooked when they took it out of plaster of paris. He testified:

"Dr. Shelton worked on my arm when I was in the hospital about 18 days, and he took it out and put it on the X-ray, and said, 'It is a little crooked, and I will have to straighten it over;' and I told him, 'Well, all right,' he could straighten it over; and he went in there and got several men and got hold of me, and I laid my arm up on the table there, and they worked on it, pulled it until it popped, and then he put it back in plaster of paris. I don't know whether he just disconnected it from the way it was, and caused it to be like it is, or not; I don't know anything about that. I could not tell by that whether or not he is considered a good doctor. I can't see nothing he done so great for me. But, at any rate, he was their doctor at the hospital."

The plaintiff's arm was rendered practically useless on account of its condition, having an ununited fracture of both bones of the forearm. The hearing in one of his ears is destroyed. He suffered severe contusions and lacerations on several different parts of his head and face that had to be sewed up, leaving scars on his head and face. His teeth were shelled and knocked out. "The army doctor sewed my head up; the scars are in it where he sewed it; where it busted open on the side, he sewed that, and over this eye here, and under this eye here." He also suffered a very severe concussion of the brain by reason of the licks received on his head, so that, as he says, he has "just loud or a roaring and continuous headache," and that by reason of the condition of his head "the least thing frustrates me and gets me half crazy." The loss of the use of his arm and the loss of hearing in his ear, which he says is "roaring and hurts me all the time," justifies the verdict, and, as no improper conduct was shown on the part of the jury, the case, in our judgment, must necessarily be affirmed.

It is so ordered.